UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

CHARLES REGGIE UNDERWOOD )
)
      Petitioner, )
)
v. ) Nos. 2:14-CR-089
)      2:15-CV-228
UNITED STATES OF AMERICA )
)
      Respondent. )

# MEMORANDUM OPINION

Charles Reggie Underwood ("Petitioner") has filed an amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Doc. 131.

*I.*

*BACKGROUND*

On August 12, 2014, an indictment was filed which charged: Petitioner, Nikki Underwood (Petitioner's wife), and James Carver with conspiring to distribute and to possess with the intent to distribute oxycodone (Count 1); Petitioner and his wife with distributing oxycodone on five separate dates (Counts 2-6); Carver with possessing oxycodone with the intent to distribute (Count 7); Petitioner and his wife with possessing a firearm in furtherance of the drug trafficking conspiracy (Count 8); Petitioner and his wife with maintaining their business premises for the purpose of distributing oxycodone

(Count 9); and Petitioner and his wife with using their residence for the purpose of distributing oxycodone (Count 10).[1]

An attorney from the Criminal Justice Act panel initially was appointed, but Petitioner later retained attorney David Crockett.[2] On November 3, 2014, Petitioner signed a plea agreement in which he pleaded guilty to Count 1.[3]

In the plea agreement, Petitioner acknowledged: that he sold a total of 58 oxycodone pills to a confidential informant on five separate dates; that he and his wife sold oxycodone from their business and residence properties; that one of his suppliers was James Carver; that he agreed that a Glock handgun found on the headboard of the bed he shared with his wife during a search of his house should result in a two-level enhancement under United States Sentencing Commission Guidelines Manual ("USSG") § 2D1.1(b)(1); that he agreed that he should be held responsible for more than 5000 but less than 10,000 30 mg. oxycodone pills; that he waived his right to file a direct appeal of his conviction or sentence except for a sentence above the guideline range; and that he waived his right to collaterally attack his conviction or sentence except for claims of ineffective assistance of counsel or prosecutorial misconduct.

For its part, the United States agreed: to dismiss all remaining counts filed against Petitioner, including the § 924(c) count; that it would not oppose a two-level reduction for acceptance of responsibility; and, if Petitioner's offense level should be 16 or greater, that it would move for an additional one-level reduction.

---

[1] Doc. 3
[2] Doc. 38
[3] Doc. 51

Due to the number of pills for which Petitioner agreed he should be held accountable, his base offense level was 30. Two points were added for possession of a weapon, and two points were added for maintaining a premises from which to distribute oxycodone. A total of three points were deducted for acceptance of responsibility. The adjusted offense level was 31.[4] Petitioner's criminal history score was 13, establishing a criminal history category of VI.[5]

The offense level and criminal history generated an advisory guideline range of 188 to 235 months.[6] The government moved for a one-level reduction pursuant to USSG § 5K1.1 which would have reduced Petitioner's guideline range to 168 to 210 months.[7] However, this Court determined that an additional one-level substantial assistance reduction was appropriate, for a guideline range of 151 to 188 months. The Court thereafter sentenced petitioner to 154 months of imprisonment.[8]

## II.

### *STANDARD OF REVIEW*

This Court must vacate and set aside Petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255(b). Under Rule 4 of the

---

[4] Doc. 74, Presentence Report, ¶ 23-33
[5] *Id*., ¶ 53
[6] *Id*., ¶ 74
[7] Doc. 92
[8] Docs. 102, 103

3

Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

An evidentiary hearing is required if the petitioner presents factual allegations unless those allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts. *Martin v. United States*, 889 F.3d 827 (6th Cir. 2018) (citing *MacLloyd v. United States*, 684 F. App'x 555 (6th Cir. 2017)).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255

4

motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978). To warrant relief for a non-constitutional error, a petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

When a § 2255 petitioner claims he was denied his Sixth Amendment right to effective assistance of counsel, an attorney is presumed to have provided effective assistance and the petitioner bears the burden of showing that the attorney did not. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). The petitioner must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington*, 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell,* 348 F.3d 177, 201 (6th Cir. 2003 (citing *Strickland*). If a petitioner crosses this evidentiary hurdle, he must then show "a reasonable probability that, but for [the attorney's acts or omissions], the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694. In other words, he must show that he was actually prejudiced by the attorney's deficient representation:

5

> To succeed on an ineffective assistance claim, a defendant must show that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). [A court's ] review of counsel's performance is "highly deferential." *Id.* at 689, 104 S. Ct. 2052. [The court must] "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690, 104 S. Ct. 2052. The defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* To establish "prejudice," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. 2052. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. [86], 131 S. Ct. 770, 792, 178 L. Ed. 2d 624 (2011). And, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. 2052.

*Docherty v. United States*, 536 F. App'x 547, 551 (6th Cir. 2013).

*III.*

*PETITIONER'S MOTION*

Petitioner claims that his attorney was constitutionally ineffective in a myriad of ways. Several of these claims overlap and are duplicative to some extent. Petitioner's claims will be addressed in the same order as set out in his motion.

A. *Involuntary plea*

Petitioner says that his guilty plea was not knowing and voluntary because his counsel failed to make an investigation prior to entry of the plea to determine that the factual basis was correct. This claim concerns the quantity of pills for which Petitioner agreed he should be held responsible in the plea agreement (more than 5000 but less than 10,000), and the USSG § 2D1.1(b)(1) firearm enhancement.

With respect to pill quantity, Petitioner points out that immediately before this court pronounced sentence, he stated that he "didn't sell no 400 [pills],"[9] which apparently was a reference to his written statement given to the arresting law enforcement officers that he bought 400 to 600 pills a week for two years for ultimate distribution.[10] Not only did his statement during the sentencing hearing directly contradict what he admitted to the arresting officers, it contradicts his recitations in his plea agreement. Moreover, during his earlier change of plea hearing, Petitioner swore to this Court: that that he had told his attorney everything he knew about his case;[11] that he believed that his attorney was aware of all the facts;[12] that his lawyer had explained the plea agreement to him;[13] that he was satisfied with his attorney's representation;[14] *and that he was pleading guilty because he in fact was guilty*.[15]

Also, it is recalled that at the commencement of the initial sentencing hearing on May 28, 2015, Petitioner had told his attorney that after talking with his mother he wanted to withdraw his guilty plea. The Court re-scheduled the sentencing hearing to allow Petitioner and his attorney to discuss the matter further.[16] Three weeks later, at the adjourned sentencing hearing held on June 18, 2015, Petitioner abandoned his request to withdraw his plea.

---

[9] Tr., doc. 123, p.12
[10] Ex. 5 to detention hearing
[11] Tr., doc, 121, p. 9
[12] *Id.*
[13] *Id.*, p. 10
[14] *Id.*
[15] *Id.*, p.16
[16] Tr., doc. 122, p. 4 *et seq.*

7

Regarding the firearm enhancement, much the same can be said. Petitioner admitted in his plea agreement that officers found a loaded Glock pistol in the headboard of the bed he shared with his wife. To be sure, at his change of plea hearing Petitioner's attorney advised this Court that his client was claiming that the gun belonged exclusively to his co-defendant wife, and that he wanted a continuance to investigate that assertion.[17] At that point, the Assistant United States Attorney said that U.S.S.G. § 2D1.1(b)(1) was a "bargained for enhancement" in lieu of the 18 U.S.C. § 924(c) charge in count 8.[18] This Court thereupon suggested to counsel that it would be prudent for him to explain the risks attendant to going to trial with the § 924(c) charge. Counsel then stated that he had just done so, and Petitioner had decided to leave matters as they were.[19] Petitioner did not express his disagreement with counsel's statement.

Petitioner argues that his attorney failed to investigate Petitioner's claim that he and his wife would be given probation if he agreed to cooperate. However, there was nothing to investigate. At his change of plea hearing, Petitioner told the Court that although no one had put any pressure on him to plead guilty, he had been promised "some leniency" by a law enforcement agent if he "helped out" with the case.[20] This Court promptly asked Petitioner if he understood that nothing said by a law enforcement

---

[17] Tr., doc. 121, p. 2-3
[18] *Id.*
[19] *Id.*, p.5
[20] Tr., doc. 121, p. 12

8

agent was binding on the Court and that his sentence would be determined by this Court, to which Petitioner answered that he did. [21]

Petitioner says that every time he told his attorney that he disagreed with the quantity of pills attributed to him, or to the firearm enhancement, his attorney said he could raise these issues on appeal. Besides being a bald conclusory statement, it makes absolutely no sense in two particulars. First, Petitioner acknowledged to this Court that he was waiving his right to a direct appeal. Second, why tell this Court "A" in anticipation of telling the Court of Appeals "Not A?" Even to a non-lawyer, it would make no sense and there is no logic to it. This unsubstantiated allegation has no indicia of verity, *O'Malley, supra*. Most importantly, Petitioner swore to this Court that he was guilty of the offenses described in detail in the plea agreement.

To state it plainly, Petitioner now is saying that he committed perjury at his change of plea hearing. There is no other way his motion can be construed. Every claim he now raises he knew about at his change of plea hearing. He swore to this Court that he was satisfied with his attorney's representation. How could that testimony have been true in light of his current claims? Petitioner cannot so cavalierly assert that he committed perjury during his change of plea hearing and now seek to benefit from it. He is bound by the sworn declarations he made to this Court. *United States v. Todaro*, 982 F.2d 1025,

---

[21] *Id.*, p. 13. Of course, Petitioner in fact was granted "leniency." His offense level was reduced by three for acceptance of responsibility. The Court granted the government's § 5K1.1 motion for a one-level reduction for assistance to law enforcement, and then *sua sponte* granted a second one-level reduction on that same basis.

1030 (6th Cir. 1993); *United States v. Rennick*, 219 F. App'x 486, 490 (6th Cir. 2007).[22] Petitioner's claim is contradicted by the record and no evidentiary hearing is required.

B. *Incorrect advice regarding the firearm enhancement*

Petitioner claims that the Glock pistol was the exclusive property of his wife; that she wrote a letter to the court so stating; and that she would have testified accordingly. Petitioner's current attorney faults trial counsel for failing to investigate the ownership and possession of the gun before Petitioner signed the plea agreement and entered his plea.

Again, there was nothing to investigate. This issue was broached by Petitioner's counsel at the change of plea hearing and, as already discussed, the Assistant United States Attorney pointed out that the USSG § 2D1.1(b)(1) enhancement was the result of plea negotiations—a two-level enhancement instead of the § 924(c) charge. A conviction on the latter would have resulted in a mandatory five-year consecutive sentence, whereas the former resulted in only 37 additional months to the bottom of the guideline range as originally calculated. Petitioner opted to proceed with the gun enhancement rather than run the risk of a mandatory consecutive five-year sentence. Petitioner's claim is contradicted by the record and no evidentiary hearing is required.

C. *Petitioner would have proceeded to trial but for counsel's incorrect advice*

Actually, this is not an independent claim, but rather is additional allegation of prejudice attached to Petitioner's claims regarding the quantity of pills and the firearm

---

[22] Perhaps of lesser importance, but nevertheless interesting, is Petitioner's March 24, 2015 letter to attorney Crockett, in which he says, "I have willingly pled guilty and I am ready to change my life around…."

enhancement. He asserts that he wanted to withdraw his guilty plea, but ultimately did not do so because of counsel's assurances that he could appeal both these issues. This claim already has been discussed and found wanting. It warrants no further consideration.

D. *Incorrectly advising Petitioner not to withdraw his guilty plea*

Petitioner's current attorney mischaracterizes what occurred at the two sentencing hearings. At the initial sentencing hearing, Petitioner's counsel announced that he, Petitioner, and Petitioner's family had discussed the guilty plea "almost on a daily basis," with the last such discussion being less than 24 hours earlier. Sometime after counsel's last discussion with Petitioner, Petitioner's mother persuaded her son to withdraw from the plea agreement. Counsel stated to the Court that he told Petitioner it would be ill-advised to withdraw his plea, but Petitioner nevertheless wished to do so. Attorney Crockett asked for some time to talk to Petitioner so that he could "fully advise him of the consequences of that decision."[23]

The Court granted that request and reset the sentencing hearing three weeks later, at which hearing neither Petitioner nor attorney Crockett said anything further about withdrawing from the plea agreement. Petitioner only said that he "didn't sell no 400 [pills]," an issue previously discussed.

Attorney Crockett did what lawyers are supposed to do—advise their clients. But whether to accept or reject that advice is the decision of the client alone. Petitioner's claim is contradicted by the record and no evidentiary hearing is required.

---

[23] Tr., doc. 122, p. 4

E. *Failure to object to the criminal history score*

As calculated by the Probation Office, Petitioner's criminal history score was 13, reported as follows:

- two points for a November 2004 conviction for Failure to Appear, for which he was sentenced to one year in January 2005;

- two points for a January 2005 conviction and one-year sentence for Failure to Appear;

- two points for an April 2009 conviction and an 11 months and 29 day sentence in August 2009 for Driving on a Revoked License, Third Offense;

- two points for another April 2009 conviction and August 2009 sentence of 11 months and 29 days for Driving on a Revoked License, Third Offense;

- two points for yet another April 2009 conviction and August 2009 sentence of 11 months and 29 days for Driving on a Revoked License, Third Offense; and

- two points for an April 2009 conviction and August 2009 sentence of 11 months and 29 days for Facilitation of a False Report of Child Abuse.

Petitioner points out that he wrote a letter to attorney Crockett dated March 24, 2015, complaining that he did not understand how felonies committed over 15 years from the date of his arrest could properly be counted in his criminal history.[24] Petitioner misunderstood the Sentencing Guidelines. First, the Guidelines specify that a prior conviction resulting in a sentence of 13 months or more, regardless of whether characterized as a felony or misdemeanor under state law, is to be included in a defendant's criminal history only if it occurred within fifteen years *from the date of the commencement of the federal offense* for which the defendant is being sentenced. If a

---

[24] Motion, doc. 131, Ex. B

prior conviction resulted in less than a 13-month sentence, it can be counted only if it occurred within 10 years *of the commencement of* the federal offense.[25] None of Petitioner's sentences were greater than 13 months. However, every sentence for which points were assigned was imposed within 10 years of the date Petitioner's federal offense commenced—November 4, 2013. Therefore, Petitioner's letter to attorney Crockett was simply incorrect, and Mr. Crockett cannot be criticized for failing to act upon it. There was no prejudice.

Petitioner's current counsel relies upon another basis to fault attorney Crockett for not objecting to the criminal history score—that it is unclear from the Presentence Report whether several of the convictions for which points were assigned were separated by arrests or by citations (or summons). Petitioner notes that the law in the Sixth Circuit is that the "intervening arrest" in USSG § 4A.1.2(a)(2) cannot be merely a citation or a summons, citing *United States v. Powell*, 798 F.3d 431 (6th Cir. 2015). Petitioner argues that *perhaps* some of the convictions were separated, not by intervening arrests, but only by citations, and therefore attorney Crockett should have objected to the criminal history score on that basis so that the question of arrest versus citation could be resolved.

The problem with Petitioner's argument is that until *Powell* was decided, the District Court for the Eastern District of Tennessee, and likely every other district court in the Sixth Circuit, considered a citation or summons to be an "intervening arrest" for purposes of USSG §4A1.2(a)(2). It was only after the *Powell* decision that the issue of whether convictions were separated by only citations or summons became a concern.

---

[25] U.S.S.G. § 4A1.2(e)

13

The *Powell* opinion was filed on August 19, 2015. Petitioner was sentenced on June 18, 2015, two months earlier. Attorney Crockett was not ineffective for failing to anticipate the *Powell* decision, something even this Court did not do. This claim is contradicted by the record and moreover has no legal basis.

F. *Failure to request a downward departure*

Petitioner complains that his attorney should have, but did not, request a downward departure. He argues that even if his criminal history score was correctly calculated, it nevertheless overstated the seriousness of his prior offenses and therefore attorney Crockett should have moved for a downward departure under USSG § 4A1.3(b).

After the reduction generated by the government's § 5K1.1 motion, Petitioner's guideline range was 168-210 months. This Court, however, granted another one-level reduction which dropped the advisory range to 151-188 months. The Court ultimately imposed a sentence of 154 months' imprisonment, which the Court believed: reflected the seriousness of the offense; would promote respect for the law; and would afford adequate deterrence to other people who might be contemplating the distribution of illegal drugs. A sentence any less than that imposed would have accomplished none of these sentencing objectives. Had counsel formally moved for another reduction, the Court would have denied the request.[26] Thus, even if it be assumed that attorney Crockett should have formally requested a further downward departure, there was no prejudice.

---

[26] Further, at sentencing defense counsel *did* orally raise the issue that Petitioner's criminal history was arguably overstated. The Court was thus aware of, and considered, the issue. Tr., doc. 123, p.10-11

14

G. *Failure to object to the § 2D1.1(12) enhancement*

Petitioner points out that his offense level was increased by two for maintaining a premises (in this case, both his business property and residence) for the purpose of distributing illegal drugs. In support of this claim, he merely reproduces the commentary to U.S.S.G. § 2B1.1(b)(12) and provides nothing further. The Court presumes that Petitioner is arguing that his sale of oxycodone from his residence or business was merely incidental or collateral, and was not one of the primary purposes for which he used these properties, and therefore his attorney should have filed an objection to the presentence report.

Petitioner admitted in his written statement that he had "not had any kind of legal job in the past three years," a potent indicator that his business property was maintained for the primary purpose of distributing drugs. Further, in his plea agreement Petitioner acknowledged that he and his wife "worked together" to sell oxycodone from their residence and business properties. The plea agreement also described five specific sales of oxycodone pills made from both properties to a confidential informant.

The sale of oxycodone from the residence and business properties was neither incidental nor collateral. Any objection by attorney Crockett to the § 2B1.1(b)(12) enhancement would have been futile since this Court would have overruled it. There was no prejudice.

H. *Failure to seek sentence reduction based on law enforcement representations*

Petitioner claims that attorney Crockett failed to inform this Court that agents induced Petitioner's cooperation in garnering evidence against Carver by promising that

Petitioner and his wife would receive probation. Petitioner argues that his attorney should have requested a sentence reduction in light of those representations.

This claim, although not precisely a misrepresentation, approaches being one. Petitioner himself, at the change of plea hearing, told the Court that Agent Kite had promised him "some leniency" in return for his assistance.[27] The Court thereupon made it abundantly clear to Petitioner that nothing said or promised by a law enforcement agent was binding as far as the sentence was concerned, and Petitioner acknowledged that he understood. Moreover, at the sentencing hearing this Court on its own motion granted an additional one-level reduction to account for Petitioner's assistance.[28] This Court was well aware of everything petitioner claims attorney Crockett should have said. There was no prejudice.

### I. *Failure to object to the procedural and substantive reasonableness of sentence*

This claim is nothing but a catchall assertion that attorney Crockett should have objected to the procedural and substantive reasonableness of the sentence "for all the reasons outlined above." Those "reasons outlined above" have been discussed and need not be discussed again.

### J. *Failure to file objections to the presentence report*

Petitioner claims that for the reasons "outlined above," Mr. Crockett should have filed objections to the PSR and, because he did not, Petitioner will be precluded from pursuing those claims on appeal.

---

[27] Tr., doc. 121, p. 12
[28] Tr., doc. 123, p.10-11

As already discussed, there was no basis to object to any portion of the PSR, so Mr. Crockett cannot be faulted for making futile or even spurious objections. As for preserving those claims (futile though they were) for an appeal, Petitioner overlooks the fact that he waived his appellate rights (with exceptions not applicable here) in his plea agreement. In short, there was nothing to preserve. Mr. Crockett was not ineffective for failing to predict that his client would attempt to violate the terms of his plea agreement. Stated conversely, Mr. Crockett had the right to presume that his client would adhere to the provisions of the plea agreement.

K. *Failure to file Notice of Appeal*

"The failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." *Ludwig v. United States,* 162 F.3d 456 (6th Cir. 1998). Petitioner claims he asked his attorney to file an appeal, whereas attorney Crockett filed an affidavit appended to the government's response stating that Petitioner made no such request. An evidentiary hearing is mandatory when there is a factual dispute in a § 2255 proceeding. *Valentine v. United States*, 488 F. 3d. 325 (6th Cir. 2006). Therefore, the single issue of whether Petitioner instructed his attorney to file an appeal regarding the enhancements to his offense level will be referred to Magistrate Judge Dennis H. Inman to conduct an evidentiary hearing and then to file his Report and Recommendation. Magistrate Judge Inman may file such orders as he deems necessary to promptly schedule and hold the hearing.

*IV.*

*CONCLUSION*

For the reasons provided herein, all of Petitioner's claims other than the "failure to appeal" claim and the request for a certificate of appealability will be denied. Petitioner's claim that he instructed Mr. Crockett to file a Notice of Appeal will abide the evidentiary hearing and filing of the magistrate judge's Report and Recommendation. Similarly, Petitioner's request for a certificate of appealability will await the resolution of the failure to appeal claim. An order consistent with this opinion will be entered.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge