UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:14-CR-089 |
| | ) | |
| CHARLES REGGIE UNDERWOOD | ) | |

**MEMORANDUM AND ORDER**

In April and May 2020, this Court denied the defendant's *pro se* motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). [Docs. 156, 158]. Now before the Court are the defendant's motion for appointment of counsel [doc. 160] and his second renewed *pro se* motion for compassionate release [doc. 162], as supplemented [doc. 169]. The United States has responded in opposition to the motions [docs. 164, 168], and the defendant has filed a reply [doc. 170].

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's second renewed motion for compassionate release will be denied, as will his motion for appointment of counsel.

**I.      BACKGROUND**

In June 2015, this Court sentenced the defendant to a 154-month term of imprisonment for conspiring to distribute oxycodone. [Doc. 102]. He is presently incarcerated at FCI Forrest City Low with a scheduled release date of August 8, 2025. *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 25, 2020). In his second renewed motion, the defendant seeks compassionate release due to the COVID-19 pandemic, obesity, hypertension, poor kidney functioning "due to high blood

pressure," his rehabilitative efforts, and his mother's poor health.[1]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

---

[1] The defendant's prior compassionate release motions cited asthma, hypertension, the COVID-19 pandemic, and his mother's health. [Docs. 151, 157]. In his instant reply brief [doc. 170], the defendant also disputes the quantity of drugs for which he was held responsible in his plea agreement and at sentencing. That is an argument which should be presented in a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Indeed, the defendant has previously raised that very argument in a 2255 motion and his claim was rejected. [Doc. 138]. As such, that issue will not be further discussed or considered herein.

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release.").[2] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Id.* at 1114.

### A. Exhaustion

The defendant submitted a renewed submitted a compassionate release request to the BOP on July 14, 2020 [doc. 169, ex. A], and his second renewed compassionate release motion was filed on August 17, 2020. The Court thus has authority under § 3582(c)(1)(A) to address the motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, obesity, hypertension, poor kidney functioning "due to high blood pressure," his rehabilitative efforts, and his mother's poor health. Consistent with § 3582 and the Sixth Circuit's directive, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

3

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

      (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

      (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

   . . .

(5) any pertinent policy statement—

   (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

4

> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

At the defendant's prison, there are currently 99 inmates and 18 staff positive for COVID-19, with 603 inmates and four staff having recovered, and no deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 23, 2020). These numbers are serious, but the Court also notes that outside the prison setting our nation is presently experiencing a "surge upon a surge" in terms of COVID diagnoses, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation ai to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

BOP medical records show that the defendant suffers from hypertension and obesity. [Docs. 168; 169, ex. B]. The evidence before the Court does not, however, confirm his allegation of severely impaired kidney functioning.

Obesity is considered to present an increased risk of severe illness from COVID-19, and persons with hypertension might be at increased risk. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 23, 2020). However, March 2020 BOP appointment records state, "Patient has not picked up his BP meds for the past 1 year. He denies any complaint and has no reason voiced out today for not picking up his BP meds in 1 year." [Doc. 168].

Additionally, as pointed out by the United States, in his initial compassionate release motion the defendant represented that he is "in good physical and mental condition." [Doc. 151, p. 3]. The BOP's SENTRY Report shows that the defendant is categorized as Care Level 2. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Dec. 23, 2020). At the time of the Presentence Investigation Report ("PSR") in this case, the defendant already suffered from hypertension and weighed 20 pounds more than he does now, but those conditions did not prevent his participation in the instant conspiracy. [Doc. 74, ¶ 70]. On these facts, the Court does not consider the defendant's documented medical conditions, and their present impact, to be "extraordinary."

Turning to the nature and circumstances of the instant offense and the defendant's history and characteristics, in this case the defendant admittedly conspired to distribute a

6

Case 2:14-cr-00089-RLJ-MCLC   Document 171   Filed 12/30/20   Page 6 of 9   PageID #: 942

substantial quantity of oxycodone from at least November 2013 to April 2014.  [*Id.*, ¶¶ 8-13].  The defendant was able to travel to North Carolina at times to obtain pills, which he would sell from his residence or his business.  [*Id.*].  He possessed a loaded handgun.  [*Id.*, ¶¶ 14-15].

The defendant was sentenced as a criminal history category VI, the highest in the federal system.  [*Id.*, ¶ 53].  Prior convictions (spanning from 1994 to 2008) include theft, vandalism, facilitation of false reporting of child abuse, failures to appear, and controlled substance and fraud offenses.  [*Id.*, ¶¶ 37-52].  Of great concern to the Court, on six separate occasions the defendant's state probations were revoked.  [*Id.*, ¶¶ 39-44, 48-50].

The SENTRY Report shows that the defendant has participated in vocational and educational programming.  He has incurred no disciplinary sanctions during his current imprisonment, and his security classification is Low.  For these things, he is commended.  The BOP considers him to have a medium risk of recidivism.

Lastly, the Court notes that the defendant's mother underwent "surgery with placement of a left ventricular assistive device" in August 2018.  [Doc. 169, ex. B].  She was readmitted to the hospital the following month with symptoms of heart failure, was stabilized, and was discharged four days later.  [*Id.*].  As of May 2, 2020, she continued to be seen at the hospital's cardiac clinic on a regular basis and, according to her licensed clinical social worker, "would greatly benefit from having family around to help with basic needs around the house."  [*Id.*].

The Court has considered the relevant § 3553(a) factors, the facts of this case, the defendant's history and characteristics, and the arguments raised in the instant motion.  The

7

Court appreciates the defendant's apparent good conduct while incarcerated, as well as his concern for his mother's wellbeing. Conversely, he has not proven that his own medical conditions are of the severity alleged. Even if he had, these issues would be outweighed by his criminal history and the 55 months of actual time remaining on his sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Further, the Court again expresses its concern that multiple state jurisdictions have previously placed the defendant on probation but on six separate occasions he has betrayed those courts' trust.

The substantial sentence reduction requested in this case would not reflect the seriousness of the defendant's criminal background, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes. The Court therefore does not find extraordinary and compelling reasons justifying compassionate release.

### III. APPOINTMENT OF COUNSEL

As for the defendant's request for appointment of an attorney, there is no constitutional right to counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising that discretion, a court should consider several factors,

including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. Moreover, pursuant to this court's Standing Order SO-19-04, Federal Defender Services of Eastern Tennessee ("FDSET") has already been appointed to represent all defendants who file a *pro se* § 3582(c)(1)(A) motion. FDSET has reviewed the defendant's file and has chosen to not make an appearance in this case. [Doc. 161].

## IV. CONCLUSION

As provided herein, the defendant's second renewed motion for compassionate release and his motion for appointment of counsel [docs. 160, 162] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge